IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIAM J. HALVORSEN,

    Petitioner,

v.                                               Civil Action No. 3:09CV419

GENE M. JOHNSON,

    Respondent.

## MEMORANDUM OPINION

William J. Halvorsen, a Virginia state prisoner represented by counsel, brings this petition for a writ of habeas corpus challenging his convictions in the Circuit Court for the County of Chesterfield (the "Circuit Court") for two counts of rape of his step-daughter ("SD1"). Halvorsen contends that he is entitled to relief upon the following ground:

> Petitioner was denied his right to effective assistance of counsel when counsel failed to investigate and properly advise the Petitioner of the facts and circumstances, including specific information that the younger step-daughter, [SD1], had repeatedly denied any sexual contact between herself and the Petitioner. She was interviewed by police numerous times, including interviews at her school and interviews which were audio recorded, and she denied any sexual contact. With this information, Petitioner would have pleaded not guilty and insisted on going to trial.

(§ 2254 Pet. 22 (emphasis omitted).) Respondent contends the foregoing claim lacks merit and has moved to dismiss.

## I. PROCEDURAL HISTORY

### A. Criminal Proceedings

On November 20, 2006, in the Circuit Court, Halvorsen was indicted on two counts of rape of SD1.[1] Halvorsen also was charged with two counts of taking indecent liberties with a child under the age of 15, and ten counts of possession of child pornography.

On December 27, 2006, Halvorsen entered into a plea agreement whereby he agreed to plead guilty to the two counts of rape in exchange for the prosecution's agreement to dismiss the remaining charges. After conducting a plea colloquy, the Circuit Court accepted Halvorsen's guilty plea.

On April 5, 2007, the Circuit Court conducted a sentencing hearing. The Circuit Court sentenced Halvorsen to life on each rape charge and then suspended all but twenty years on each charge, for a total active term of imprisonment of forty years.

### B. State Habeas Proceedings

#### 1. Halvorsen's Petition and the Commonwealth's Response

On May 27, 2008, Halvorsen, by counsel, filed a petition for a writ of habeas corpus in the Circuit Court. In that petition, Halvorsen raised his present claim for federal habeas corpus

---

[1] SD1 was too young under Virginia law to consent to any sexual intercourse. The pertinent portion of the statute provided, "If any person has sexual intercourse with a complaining witness . . . and such act is accomplished . . . with a child under age 13 as the victim, he or she shall be guilty of rape." Va. Code Ann 18.2-61(A) (West 2005).

relief. Halvorsen offered the following sworn statements in support of this claim:

> 10. The Commonwealth charged the Petitioner with two counts of rape of [SD1] based on the photographs obtained and the allegation that the Petitioner admitted to some type of sexual contact with her. However, Petitioner denies that he admitted any sexual contact between himself and [SD1], and he says that, in fact, he did not have any sexual contact with her.
>
> 11. Further, according to [SD1] herself, she was interviewed by police numerous times, with most interviews being conducted at her school and tape recorded. According to [SD1], she repeatedly denied any sexual contact with the Petitioner.
>
> 12. Counsel failed to discover this information. As such, counsel was ineffective.
>
> 13. Petitioner entered guilty pleas based on counsel's advice, including a statement that Petitioner should not receive a sentence any longer than ten to twelve years. Counsel advised that Petitioner had "no choice" but to plead guilty due to the photographs and/or videos which were discovered, as well as the claim by Detective Vincent that the Petitioner engaged in sexual intercourse with [SD1]. The Petitioner denied that the intercourse occurred, and he denied that he made such a statement to Detective Vincent.
>
> 14. Under the circumstances, if Petitioner had known that [SD1] denied any sexual contact with Petitioner, the Petitioner would have pleaded not guilty and insisted on going to trial with the defense that no sexual intercourse occurred between the Petitioner and [SD1].

(Circuit Court Habeas Rec. at 5-6.)

The Commonwealth submitted a motion to dismiss the petition. The Commonwealth attached to its motion: an affidavit from Halvorsen's trial counsel, George A. Townsend, IV; an affidavit from the prosecutor, Bernard J. McGee; notes from the detectives

who had investigated the case; and the transcript of Halvorsen's guilty plea proceeding before the Circuit Court.

2. **The Circuit Court's Decision**

Without conducting an evidentiary hearing, the Circuit Court denied the Halvorsen's habeas petition based upon the Commonwealth's submissions.

> [T]rial counsel and the prosecution in this matter refute the petitioner's assertion that he was unaware of [SD1's] earlier statements denying the occurrence of any sexual contact. Trial counsel, George A. Townsend, IV, Esq., avers:
>> Prior to trial, [Halvorsen] and I were both aware that [SD1] had made inconsistent statements about the allegation of illegal touchings by Mr. Halvorsen. I had spoken with my client numerous times and with his family members numerous times and uniformly they told me that [SD1] had denied any illegal touchings or rape on numerous occasions. Furthermore, [Halvorsen] and I were of the strong belief that [SD1] would either not appear for trial or would deny any illegal touchings at trial.
>> While these facts posed significant problems for the prosecution of the rape charges, we could not ignore the remaining twelve charges. Many of our discussions prior to trial assumed that the Commonwealth would not be able to sustain a conviction on the two rape charges. We discussed many times the likely sentence from the jury if the rape charges were dismissed and convictions were sustained on the remaining charges.
>> In summary, [Halvorsen] and I were both aware that [SD1] had denied illegal touchings and based on this fact and many other considerations in this case, he decided to plead guilty in exchange for the dismissal of the remaining twelve charges.
> Respondent's Exhibit 1, Affidavit of George A. Townsend, IV, Esq.

15. The prosecuting attorney in this matter, Assistant

Commonwealth's Attorney Bernard J. McGee, avers that during the execution of the search warrant at the petitioner's residence, both of Halvorsen's step-daughters denied any type of sexual abuse. See Respondent's Exhibit 2, Affidavit of Bernard J. McGee, p. 1, ¶ 2-3. Pursuant to the search of the petitioner's residence, a photograph was found depicting the petitioner's penis in close proximity to the mouth of [SD1]. Respondent's Exhibit 2, p. 1, ¶ 5. Thereafter, the petitioner was arrested, and admitted to Detective Keith Vincent that he had penetrated [SD1's] vagina with his penis on "two or three" occasions. Respondent's Exhibit 2, p. 1, ¶ 7. In a subsequent recorded interview of the petitioner's step-daughters, they both admitted to being sexually abused. Respondent's Exhibit 2, p. 2, ¶ 9. On October 6, 2006, trial counsel for the petitioner engaged in a two hour discovery conference with the prosecution. Respondent's Exhibit 2, p. 2, ¶ 12. At that time trial counsel was provided access to all of the prosecution's evidence and, in addition, trial counsel was informed that [SD1] had initially denied "any type of inappropriate contact." Respondent's Exhibit 2, p. 2, ¶ 12.

16. In light of the extant record establishing the petitioner's knowledge of [SD1's] earlier denial of sexual contact with the petitioner, Halvorsen cannot meet his burden to establish the requisite deficient performance of counsel under the <u>Strickland</u> test with respect to Claim A.

17. Moreover, in light of the terms of the plea agreement negotiated by the petitioner with the prosecution, he cannot demonstrate the requisite prejudice under the <u>Strickland</u> test to prevail upon a claim of ineffective assistance of counsel in habeas. As is made clear in <u>Hill</u>, Halvorsen must establish that a reasonable probability exists that, but for counsel['s] error, he would have pleaded not guilty and insisted on trial to establish prejudice in the context of a guilty plea. As a result of the plea agreement, Halvorsen no longer faced twelve additional felony offenses of possession of child pornography and the taking of indecent liberties with a child under 15 years of age, carrying the possible penalty of up to one hundred and fifteen years additional years of imprisonment. Despite the petitioner's assertion that he would not have entered his plea of guilty had he known of [SD1's] earlier

5

denials of sexual contact, trial counsel states clearly that the petitioner was not only fully cognizant of such statements, but that Halvorsen concluded that the risk of incarceration from the remaining twelve offenses outweighed the benefit of prevailing on the charges of rape. For this reason the petitioner made the decision to enter a guilty plea. See Respondent's Exhibit 1. An objective analysis of the risk and rewards associated with trial on these charges given the evidence against the petitioner renders highly dubious Halvorsen's claim that he would have preferred a trial rather than accepting the plea bargain. Hill, 474 U.S. at 59. To that end, the petitioner has failed to demonstrate the requisite prejudice under the Strickland test necessary to prevail upon a claim of ineffective assistance of counsel in habeas.

18. Furthermore, a criminal defendant is bound by his statements at trial concerning the adequacy of his counsel and the voluntariness of his plea. See Anderson v. Warden, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981). See also Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (same).

> [The] colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance. Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings. At these colloquies, judges take the time to insure that defendants understand the consequences of a guilty plea.

Fields v. Gibson, 277 F.3d 1203, 1214 (10th Cir. 2002).

18. During the plea colloquy the petitioner stated that counsel had done everything necessary to investigate the matter, that counsel had provided legal advice, and prepared for trial. (Trial Tran[s]cript, 12/27/06, hereinafter T.T., p. 12) (Entire transcript filed as Respondent's Exhibit 3). Furthermore, the petitioner stated to this Court that trial counsel had discussed with him any possible defenses that he possessed, and that after such discussion he, the petitioner, decided for himself to enter a guilty plea to the rape charges. (T.T., p. 9-10). He stated that this guilty plea was entered freely and voluntarily and that he was, in fact, guilty of the offenses. (T.T., p. 10). The petitioner has offered no valid reason as to why he should be permitted to contravert these affirmations before this Court and he is thus bound by their truth and accuracy. Anderson, 222

6

> Va. at 516, 281 S.E.2d at 888. For these reasons Claim
> A must fail.

(Circuit Court Habeas Rec. at 114-18.)

Halvorsen pursued an appeal to the Supreme Court of Virginia from the Circuit Court's denial of his habeas petition. On May 28, 2009, in a summary order, the Supreme Court of Virginia denied Halvorsen's petition for appeal.

## II. THE APPLICABLE SUBSTANTIVE AND PROCEDURAL CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

This Court's authority to grant habeas relief corpus is governed by 28 U.S.C. §§ 2254(d) and 2254(e)(1). Under Section 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that this standard requires federal habeas petitioners to demonstrate not only that the state court's decision was erroneous or incorrect,

7

but also that it was unreasonable. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

Although the Supreme Court of Virginia did not render a detailed opinion, the Circuit Court's decision and factual findings rejecting his petition for a writ of habeas corpus are entitled to deference. See McHone v. Polk, 392 F.3d 691, 704 n.5 (4th Cir. 2004); Fisher v. Lee, 215 F.3d 438, 445-46 (4th Cir. 2000).

### III. ANALYSIS

To demonstrate the ineffective assistance of counsel, a defendant must show first that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance facet of Strickland, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel's performance was deficient

if the claim is readily dismissed for lack of prejudice. Id. at 697. That is the case here.

In the context of a guilty plea, the Supreme Court has modified this second prong of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). A petitioner's assertion that he would have pled not guilty but for counsel's alleged error is not dispositive of the issue. See United States v. Mora-Gomez, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry, see Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill, 474 U.S. at 59-60), cert. denied, 128 S. Ct. 2975 (2008). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. Id. at 369-70. Of course, in conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "Absent clear and convincing evidence to

9

the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) (citing Blackledge, 431 U.S. 74-75; Little v. Allsbrook, 731 F.2d 238, 239-40 n.2 (4th Cir. 1984)).

Here, Halvorsen suggests that he would not have pled guilty if he had known that SD1 had made some denials to authorities that any inappropriate sexual contact had occurred. Halvorsen's assertion that his decision to plead guilty somehow hinged on the strength of his SD1's testimony is palpably incredible. Rather, the record convincingly demonstrates that his guilty plea was driven by the other substantial evidence of his guilt, the lack of any plausible defense to the charges, and the significantly lower sentence he hoped he might possibly receive by pleading guilty.

At the time of his guilty plea, Halvorsen was fully aware that the prosecution would have had difficulty obtaining testimony from SD1 that Halvorsen had raped her. Specifically, at the plea hearing, the prosecutor acknowledged that Circuit Court might be reluctant to accept the Plea Agreement in light of the gravity of the charges against Halvorsen. The prosecutor explained that he had reached the Plea Agreement in part to spare Halvorsen's step-daughters the trauma of testifying at trial. (Dec. 27, 2006 Tr. 28.) Additionally, the prosecutor admitted that he "was not sure . . . whether [Halvorsen's step-daughters] would deny these

things occurred. It's certainly a possibility and the Commonwealth believes it's a very strong likelihood at this point." (Dec. 27, 2006 Tr. at 29.) Thus, the contemporaneous record refutes the notion that SD1's potential testimony played a pivotal role in Halvorsen's decision to plead guilty.

Moreover, Halvorsen was aware that the prosecution had compelling evidence that he had committed the two counts of rape along with the other crimes charged. First, Halvorsen "admitted to Detective Keith Vincent that he had penetrated [SD1's] vagina with his penis on two or three occasions." (State Habeas Rec. at 115(internal quotation marks omitted).) Additionally, Halvorsen knew the prosecution had seized from his home numerous nude pictures of himself with his young stepdaughters. Particularly damning, the prosecution had two photos of Halvorsen with SD1: the first photo "depict[s] the petitioner's penis in close proximity to the mouth of [SD1]" (State Habeas Rec. at 115) and the second depicts his penis in close proximity to SD1's vagina. (Dec. 27, 2006 Tr. 23; Apr. 5, 2007 Tr. 32).) Furthermore, Halvorsen could not testify in his own defense against the rape charges because, despite any denials by SD1, he knew, as evidenced by his admissions at his plea colloquy, that he had in fact raped SD1 on at least two occasions. (Dec. 27, 2006 Tr. 8; Circuit Court Criminal Rec. at 40.) Although the evidence of Halvorsen's guilt might not have

been overwhelming, a conviction on the two counts of rape and some of the other charges was almost certain to follow any trial.

Furthermore, Halvorsen's plea had the potential to significantly reduce his sentence. As observed by the Circuit Court, the dismissal of the other twelve charges immediately reduced Halvorsen's sentencing exposure by 115 years. (State Habeas Rec. at 116.) Although Halvorsen still faced a sentence of up to life imprisonment on each of the rape charges, Halvorsen was aware of the possibility for a fairly light sentence if the Circuit Court followed Virginia's advisory sentencing guidelines.[2] Those guidelines suggest that an appropriate sentence for Halvorsen's two rape convictions was between four years, two months and twelve years. (Circuit Court Criminal Rec. at 49.) In contrast, the minimum sentence a jury could recommend on each count would be five years.[3] Thus, by eliminating any jury recommendation on sentencing, Halvorsen's guilty plea increased the chances that he might receive the lenient sentence recommended by Virginia's

---

[2] Halvorsen acknowledged during his plea colloquy that he had discussed Virginia's sentencing guidelines with his attorney. (Dec. 27, 2006 Tr. 11.) Halvorsen further acknowledged that those guidelines were not binding upon the Court and that he could still receive up to a life sentence. (Dec. 27, 2006 Tr. 11; Circuit Court Rec. at 41.) In light of these representations, Halvorsen cannot claim he was prejudiced by any inaccurate prediction of his sentence by counsel. See United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995).

[3] Moreover, considering the disturbing circumstances of his crimes, a jury would likely recommended a sentence well above the statutory minimum.

sentencing guidelines. Although ultimately unsuccessful, a guilty plea represented Halvorsen's best chance for a lenient sentence. See Meyer, 506 F.3d at 369-70.

Given the evidence of his guilt, the relative unimportance of SD1's testimony at trial, and the potential sentencing benefit to be obtained by pleading guilty, Haloversen fails to demonstrate any possibility that he would have pled not guilty and insisted upon going to trial had he know of SD1's denials of inappropriate sexual contact. Accordingly, Halvorsen's claim will be DISMISSED. The motion to dismiss (Docket No. 4) will be GRANTED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). For the reasons stated above, Halvorsen has not satisfied this standard.

The petition for a writ of habeas corpus will be DENIED and the action will be DISMISSED WITH PREJUDICE.

The Clerk is directed to send a copy of the Memorandum Opinion to Halvorsen and counsel of record.

And it is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: November 21, 2010
Richmond, Virginia